May I please record, my name is Bao-Lin Chen, representing petitioners ANA International, Inc. and Mr. V. The issue in this case is whether INA 242-A2-B2 precludes a judicial review of legacy INA's decision to revoke an approved immigrant visa petition based on its power under INA 205. The answer is obvious. The court has jurisdiction to review, simply because this court in Spencer Enterprises has already held that the federal court can review INA's denial of an immigrant investor visa petition weighed under INA 204-B. Is that under INA 242-B1 or 242-B2, Mr. Chen? I'm sorry? Under INA 242-B1-I or 242-B-II? 242-B-II. Okay. And let me ask you this. In the government's Rule 28-J letter, they cite to a Seventh Circuit case that was recently decided, El-Kadar v. Monica, where the Seventh Circuit held that we don't have jurisdiction. Why shouldn't we go along with the Seventh Circuit in order to avoid a circuit split on this issue? That is a good question, Your Honor. However, this court is aware of kind of a split between the circuits. In Spencer Enterprises, this court specifically mentions a Tenth Circuit Court decision, says our decision is kind of in conflict with that Tenth Circuit Court case. However, in that case, the court there does not engage our analysis, does not focus on the language, the discretion specified under INA. If you look at this Seventh Circuit Court, the same holding, same reasoning basically says we have no jurisdiction to review any discretionary decision, and we know that not test under Spencer Enterprises. Well, let me ask you a more fundamental question, Mr. Chen. As I understand the procedural history, you filed your lawsuit in federal court, your declaratory judgment action, before the expiration of the administrative appeals unit appeal. And my question would be, why shouldn't we find that you failed to exhaust your administrative remedies before attempting to invoke the jurisdiction of a federal court? Your Honor, I can answer that question, but I didn't represent the hearing below. However, when this case was originally filed, this is actually the second action in the district court. The first action was filed before the AAU decision, and then during the pending the case, the AAU made its decision. So the district court told the counsel from both sides, says, how about you dismiss the current one and file a new one? So you would agree that there is a requirement at a minimum that the petitioner exhaust administrative remedies before a federal court would have jurisdiction under your theory of the case? I think generally that's a rule. There might be some exceptions. However, that issue is mute because this was filed after. That's right. Okay. So I think let's return to that issue about the second court decision. I mean, under Spencer Enterprises, this court says the test is not whether the INS action is discretionary, but whether it's unfettered discretion, whether it's a kind of discretion unguided by any legal principles. That's not a nemesis under the seventh secret court. What factors would we apply to review the INS decision not to grant a visa to your client in this case? Your question actually is a question answered by Spencer Enterprises, if you remember, in Spencer Enterprises. Spencer says that we have to have some sort of standard that we can apply before judicial review is meaningful. And my question for you in this particular case, with this particular type of visa, which I confess I do not have much experience with because we don't see these cases very often, what factors would you point to that this panel as a federal appellate panel reviewing the administrative decision could apply to determine whether or not the Attorney General had abused his discretion in revoking the visa? Well, my answer is the standards and the requirements are the same as in Spencer Enterprises, because in Spencer Enterprises, the issue is whether the court can review INS decision to deny a visa. But wasn't Spencer different? Didn't it involve an investor? And didn't the statute say that if the investor had tendered the sufficient amount of money, a million dollars or whatever it was, that the Attorney General shall issue the investor visa? But this is different. This is a regulation that says you might be able to qualify if you are an executive level manager of a subsidiary company. And so my question is, what factors do we look at to decide whether or not the Attorney General abused his discretion in revoking the visa? Well, yeah. Under INA 203, there are statutory eligibility standards, both for investor visa and also for inter-company managerial transfer, as we are dealing with here. So if you compare those two cases, the standards are under 203B something. But the investor is different. It says that the Attorney General shall. In this case, as I read the language, it says that in essence he may, for whatever reason he deems appropriate, I'm not exactly paraphrasing or quoting the language I'm paraphrasing, that he may revoke the visa. So what do I look at to decide whether or not the Attorney General abused his discretion in taking the visa away from your client? Well, Your Honor, actually it's the same. Because under 203, you are talking about 205 revocation. Under 204, it still says the Attorney General shall approve this particular visa. That's what they did in this case. They first approved the case, and then they go to 205 to revoke the visa. I'm still waiting for an answer to my question. What factors, what specific things do we look for to determine whether or not the action is arbitrary, capricious, or unreasonable, which I assume is the underlying legal standard for concluding abuse of discretion? Well, under 205, the statute says the Attorney General can revoke an approved immigrant visa, or any visa, for good and sufficient cause. And this court interpreted good and sufficient cause to mean it's a requirement, it's a limitation on the part of the Attorney General, and they have to produce sufficient evidence to overcome why they approved the visa in the first place. Of course, you would return to the 203 eligibility standard to decide whether Attorney General abused his power. And in Spencer Enterprises, actually this issue is answered affirmatively, and in a footnote, this court says in Spencer Enterprises, revocation power does not give Attorney General absolute power. And the government actually agreed with that statement, but just to say it's that deep. So your answer is that the statutory standard contained in 8 U.S.C. 1155 is that the Attorney General may revoke, quote, for good and sufficient cause. This does not say, in his sole discretion, does not say, as he deems in the interest of the United States, it says for good and sufficient cause. That's the language that was construed in the footnote in Spencer. That's right. Have you found any other circuit agreeing with Spencer? Yes, I do, Your Honor. I, you know, I didn't cite those cases. Well, I think this case looks like it might be headed for the Supreme Court if we don't agree with the Seventh Circuit, and it might be a good thing to get it on its way. Well, I agree with you, Your Honor. It could be because if you – basically, you have two camps. One is this court says we don't look at any discretion. We only look at discretion specified, discretion without any legal standards. But those circuit courts says, well, the plain language says any discretion. Therefore, that's it. Well, is – is the good and sufficient reason standard – a standard or just some auditory language for the Attorney General to think about? I think it's a restriction. I think it's a limitation because this court says so in Spencer Enterprises, also in that case in 1984. It says any less reading would take good sufficient requirement away, so it's not absolute power. On the other hand, it's a limitation. Another way to look at this case is rely on Montero case, which we – so we would get around the discretion field. We simply say this is a legal determination, okay? In Monteroville, the issue is whether the alien has a child for the purpose of INA. And this court says, well, that's a legal determination. We can make this decision. It's the same thing here, whether Mr. Lee qualifies for an intercompany transfer rate program, and that's eligibility. If you look at the government brief, they acknowledge that. They say the reason we revoke his visa is because we thought he's not eligible. He's not a – he was not a manager before he came to this country. He is not filling a position of manager in this country. Well, he came over on a visitor visa, didn't he? I'm sorry? A visitor – yeah, he was a visitor visa, wasn't he? He didn't come over on an industrial necessity. That's right, Your Honor. He first came as a B-1 business visitor to explore the possibility to start a U.S. subsidiary. And then he applied L-1A visa in 1995 with INS. They approved it. Basically, it says, yeah, you are eligible. And in 1996, he applied L-1A again, which was approved. In 1997, the INS approved the immigrant visa. And then they revoked it almost four years later. Mr. Chen, isn't our decision in Spencer limited to interpreting the exercise of discretion in removal proceedings? And we didn't decide in Spencer that it extended beyond that, correct? That's right. You are right. So this is the case that would require us to extend the Spencer rule to the question left open in Spencer. That's a very good question. I'm looking at this case, think this case carefully. I think there are three ways you can reverse district court. One is relying on Spencer Enterprises since this power, revocation power, is not specified. Second, you rely on Montero case since this is a legal determination. Thirdly, you expand this interpretation into removal. Whether this is removal, discretionary decision, or it's non-removal. So the answer to my question is that we would have to expand Spencer. That's right. Because I was looking specifically at the language at 345F3rd, I guess it's 683, maybe? In any event, where we say because we hold that the decision whether to issue an immigrant investor visa is not discretionary, we need not decide whether Section 1252A2B2 applies outside the context of removal proceedings. You are right, Your Honor. Spencer Enterprises specifically says we limit our decision. Our test is whether that discretion is absolute or not. We don't discuss about whether it applies to removal proceedings or out of removal proceedings. So if we wanted to avoid the conflict that Judge Goodwin asked you about, one way to do it would be to restrict Spencer to removal proceedings and hold in this case that it doesn't extend beyond removal proceedings, thereby ruling consistently with the Seventh Circuit. Well, actually, if you rule that 242A2B2 applies only within removal proceedings, that's direct conflict with the Seventh Circuit Court. They said any discretion is precluded. If now you say only discretion within the removal proceedings is precluded, that's direct conflict. Well, the Seventh Circuit would agree with that portion of our ruling, wouldn't it? But theirs is broader is what you're saying. That's right. They hold it very broadly. So we would avoid a conflict in this case if we were to agree with the Seventh Circuit that it doesn't cover this case because it's not in removal proceedings. Again, I think that's direct conflict with the Seventh Circuit Court. I don't see how it is at the Seventh Circuit. Well, if you see answer in the Seventh Circuit under that El-Kadar case, or however my program is pronounced, Monica, let's go with that one. If the Monica case controls, the answer would be the same in the Seventh Circuit. You would be out of court if you were arguing this case in Chicago. That's right. Okay. Yeah. If I'm in the – actually, if you look at the Monica case, the counsel there argued that that preclusion only applies in removal proceedings. The Seventh Circuit Court answers no. It precludes any discretion. So the only way to reconcile with the Seventh might be to say this is a legal determination. We're not talking about discretion at all. And we have a case to support that, a material case. Whether this alien has a child is a legal determination, and now whether Mr. Yu is a manager for immigration law purposes is also a legal determination. Again, though, I'm informed by what – what do I look to to decide whether he's a manager or not? Isn't the real question under Spencer whether there is substantial evidence to support the immigration agency's decision that he is not a manager, and that once we've satisfied ourselves that there is substantial evidence, then we cannot find an abuse of discretion? Well, if you recall in Spencer Enterprises, the court – this court applies to – apply INA 203, which is a standard requirement. And 203 also controls the legal standard for this case. Now, about whether there should be sufficient evidence, yes. But that's a merits decision. In Spencer Enterprises, the court below – the jurisdiction issue was raised by this court. So the merits was discussed below. So this court took over the case, firstly decided the jurisdiction, and then made a merits hearing. But in this case, the district court did not enter a merits decision. So basically, whether there's a sufficient reason to say Mr. Li is a manager or not is for the court to decide. So if we have jurisdiction, we would have to remand it for the district court to make that determination? Yeah. And then we would make an argument. If you proved, based on the record, four petitions, what is the sufficient reason to revoke them? And that wasn't decided yet. That's right. I think we have your argument at hand at this time. You've got a minute and a half. Why don't you save it? Let's hear from the government, and then you can come back and rebuttal. Thank you, Your Honor. Thank you. Good morning, Your Honors. My name is Jacqueline Dryden, and I represent the government of the United States. The district court correctly found that Section 242A2Bii expressly precludes judicial review of the Attorney General's decision under Section 205 to revoke Anna's previously approved visa petition filed on behalf of Mr. Yee. Applying this court's recent decision in Spencer, the district court's decision should be affirmed. In Montero-Martinez, this court noted that Section 242A2Bii is a catch-all provision that serves to ensure that any unenumerated provisions regarding discretion are covered. It specifies in the discretion of the Attorney General. In other words, in a way, I think I knew this already, but if it's totally committed to the discretion of the Attorney General, that's synonymous with saying there's no judicial review because it's totally committed to the discretion. Yes, Your Honor, and Spencer went on to say exactly that. In Spencer, this court further recognized that Section 242A2Bii strips the federal courts of jurisdiction to review certain discretionary decisions, and revocation of a visa petition is one of those decisions. Now, we're very familiar, however, with various governmental actors, including in the immigration context, of having some discretion bounded by certain legal principles. Why is it not sufficiently bounded by a legal principle here when the statute says that the visa can be revoked only for, quote, good and sufficient cause, close quote, and when we know there are specific standards that were previously applied and that the Attorney General would be applying in trying to decide whether to revoke, is to say, managerial status? I mean, this is not without criteria. In fact, it's criteria that shows up on the books. Why is this totally committed to the Attorney General's discretion, then? There are legal criteria that the Attorney General turns to decide whether or not to grant or deny the visa petition. Right. However, there are no legal criteria to determine whether or not, when the Attorney General determines whether or not to revoke a visa petition. There's a distinction there. Well, isn't revocation governed by the standard good and sufficient cause? Isn't that the statutory language? I do want to point something out about that particular language. It's for what the Attorney General deems is good and sufficient cause. Let me make sure we're focusing on the language. But he deems to be good and sufficient cause when they revoke. Right. There you go. Right. So I think it's very clear that it's within the Attorney General's discretion to determine the reasons for his discretionary decision to revoke a visa petition. It's not for the Congress to not set out any standards articulating those reasons, nor is it within this Court's purview to determine whether or not it's a good and sufficient reason. Are you familiar with our fairly recent decision, Nakamoto v. Ashcroft? Yes, Your Honor. I received Mr. Chen's 28-J letter on that case. In that case, the panel held that there was sufficient boundary to the discretion to make it reviewable. When the statute says, to the satisfaction of the Attorney General and in the opinion of the Attorney General, which I regard as essentially equivalent to the deems language in 1105, if Nakamoto is good law and, unless overturned, we're bound by it to the extent that it binds us, there it is, how would you distinguish our holding in Nakamoto that language such as, to the satisfaction of the Attorney General and in the opinion of the Attorney General, allow judicial review, square that with deems in 1105? Okay. In Nakamoto, this Court was looking at the Attorney General's decision to place an alien in deportation. The provision that the Court was looking at was a ground of deportability. Oh, I understand that. And there were many standards within that deportability ground that the Attorney General had to overcome before he could decide whether or not to place an alien in removal proceedings. So there were several key decisions, and that's something that the Court noted, that there were several key decisions that the Attorney General had to first overcome to determine whether or not it was proper for him to place an alien in removal proceedings based on that. A revocation decision is completely different than that. A revocation decision, the Attorney General may turn to look at the standards for which he initially granted the visa petition, or he doesn't have to look at those standards. He can rely on other bases for making the determination to revoke a visa petition. Let's say, for example, that the Attorney General revokes the visa on the ground that, in the Attorney General's determination, the applicant or the petitioner is not sufficiently in the managerial category. And I gather that's, in fact, the issue here. Okay. Why is that not a standard that is then both applied by the Attorney General, but then a sufficiently precise standard that should be reviewed? That doesn't sound like a totally discretionary standard. Your Honor, I think we need to look at Section 205 a little bit broader than that because it says, for whatever the Attorney General deems good and sufficient reason. Good and sufficient cause. I'm sorry. I'm not sure cause and reason means something different. Good and sufficient reason. As I mentioned, the Attorney General can look at those legal standards that he initially applied to approve the visa petition, and that may be one reason that he determines. In this case, do we know why the Attorney General revoked? I believe the last agency decision made the determination that Mr. Yee was not a manager or an executive. In other words, the criteria for the Attorney General's decision in this case was managerial or not managerial. While there may be other circumstances not in front of me that I'm not sure I understand yet because they're not in front of me, circumstances where the criteria are totally discretionary, the criterion applied here sounds like, is he or is he not a manager? That sounds like a legal standard. It's an issue in the case at a lower level. However, the district court never reached that decision, so I don't know if it's appropriate for the court to be trying. But the question in front of us, in front of the district court, I think, is is it judicially reviewable when the Attorney General has denied because, and I think the record is pretty clear on this, because in the opinion of the Attorney General, this petitioner was not sufficiently managerial. Now, I have no idea whether he was or wasn't. I mean, that's not in front of me. But that seems to have been the criterion for the Attorney General's decision. In this particular instance, the answer is yes. And you're saying, nonetheless, there's no, there's sufficiently, it's so standardless that we cannot review this decision? Yes, Your Honor. Well, why is that? I don't get it yet. Well, there are no standards in Section 205. Good and sufficient cause. Now, good cause in other areas of the law is understood to be a standard. I mean, firing for good cause. I mean, we understand in various areas that's a judicially enforceable standard. It's kind of general, and you can argue about it, but it's a legally enforceable standard. Well, again, it's for what the Attorney General deems to be a good and sufficient reason. I want to point that out. But the Attorney General set out some regulations that narrow, indeed, what he does. And one of them is, okay, if he's managerial, he gets the visa. If he's not managerial, he doesn't. Well, Spencer actually discussed that. And Spencer said that when we're determining whether or not the Attorney General is acting completely and entirely within his discretion, we must look at the statute. We don't look to the regulations, and we don't look to, in this case, board case law to determine whether or not the statute provides absolute discretion and then taken next, for which this Court has no jurisdiction to review. So we don't have to even go to the regulations to determine that Section 205 confers complete and unfettered entire discretion within the Attorney General to revoke a visa petition for whatever reason. But the language doesn't say complete, entire, and unfettered discretion. It says what he means to be good and sufficient cost. Right. And then under Section – you have to – you look at Section 205 in light of Section 242A to B, little i and little i. And that says discretion. Specified in the authority for the – as interpreted by this Court, specified to be within the authority of the Attorney General. Specified on this subject to be within the discretion of the Attorney General. Right. But it doesn't tell us precisely what it means by discretion beyond the use of that simple word discretion. Well, then the Spencer Court set forth what the government submits as a four-pronged test to determine whether or not an agency decision is a complete and entirely discretionary determination by the Attorney General. The first one is that the provision that we look at, in this case Section 205, specifically mentions the Attorney General's discretionary authority. And in this case, Section 205 uses the language may. It's only as an example. It's not the be-all, end-all of this case. And for what he deems to be good and sufficient reason. Again, it's what the Attorney General deems to be the good and sufficient reason, not what Congress has set forth in statutory standards nor what this Court should be looking at to determine what are the legal standards. The second part of the test is that the right or power to act must be entirely within the Attorney General's conscience or judgment and your decision in Nakamoto, you focused on that part of the Spencer test. And again, it's for what the Attorney General deems to be good and sufficient reason. It's within his value judgment to determine whether or not a visa petition should be revoked. The third part of the test. But Nakamoto went precisely the other way from your argument on language that was, I think, even more, as it were, differential to the Attorney General than the word deems. I would disagree with that, Your Honor. I think that the Nakamoto decision recognized that there were legal standards that the Attorney General had to overcome before he could make the discretionary determination to place an alien in removal proceedings for having committed marriage fraud. The third part of the test is that the Attorney General may take the action, but he may not do so. This is a perfect example of that. The Attorney General previously approved Anna's visa petition filed on behalf of Mr. Yee. He can now decide whether or not to continue to approve that visa petition or he can decide to revoke that visa petition. He doesn't have to revoke the visa petition, but he may do so, and that's completely within his discretion to do so. The last one, and I think we touched on this a little bit ago, is that under the language of the statute, the decision is left to the Attorney General with no governing standards. Again, that turns back to the language, the word may in Section 205, and for what he deems to be good and sufficient reason to revoke. There are no standards in that provision explaining how this court should look at the Attorney General's decision to revoke. And, in fact, consistent with this court's decision in Matsock, that there are no standards for determining when the Attorney General is exercising his discretion. How do you deal with the BIA's decision, and I'm not sure I'm pronouncing it right, in Ray Toffik? It sounds as though in Ray Toffik the BIA itself has tried to put some, or may have tried to put fines in the good and sufficient cause standard, some real standard. Your Honor, I'm not familiar with it. In Ray Toffik, a 20 INN decision, 166, decided in 1990. I would have to review that decision, Your Honor. I'm not familiar with it in light of this case. I can review that decision and definitely I'll just read briefly the language that seems to me potentially relevant. This is BIA saying, A notice of intention to revoke a visa petition is properly issued for good and sufficient cause, in other words, the statutory language, when the evidence of record at the time of the issuance, if unexplained or unrebutted, would warrant a denial of the visa petition based upon the petitioner's failure to meet his burden. However, when a notice of intention to revoke is based upon an unsupported statement, revocation of the visa petition cannot be sustained. In other words, what's your evidence? I mean, it's an orderly proceeding such as we're familiar with. Right. This is not a standardless discretionary business even within the BIA. Well, it's within the agency's determination to look at those standards. However, it's not for this court to then second guess whether or not the agency is making the correct decision or the incorrect decision. It's the agency's, it's completely within, entirely within the attorney general's discretion to make such determinations. And it need not go any further than that. And there is something I would like to turn back to. Is that what that means or doesn't it, I mean, what language Judge Fletcher just read you sounds an awful lot to me like whether or not there is substantial evidence to support it or evidence which would compel the opposite exercise of discretion. That's how I read the BIA's language. Right, Your Honor. And I think that's even consistent with what this court looked at when Tonga Tapu was before it in 1984. It read a substantial evidence standard into the good and sufficient reason, into the good and sufficient reason language of the provision. However, that court, first of all, did not decide whether or not it even had jurisdiction. It just sort of assumed that it did have jurisdiction over that case. And I think more importantly, IRA-IRA had not been passed yet, withdrawn, stripping this court of jurisdiction over discretionary determination. So Tonga Tapu, yes, it sort of addresses, it seems to address the issue. However, considered in light of the 1996 IRA-IRA legislation, any jurisdiction that the court once had has since been stripped. And that's where we are today. Let me ask you a different question. And on this one, I think I'm inclined to be sympathetic to the government's position. But I'd like to hear your view on this one. And that is the heading of the jurisdiction stripping provision, if I can call it that, in 1252, is judicial review of orders of removal. Your argument is, however, that the subsection 2BII, in fact, extends beyond merely orders of removal. Yes, Your Honor. I think the plain language states that. The plain language of everything except the heading of the section? Right. Exactly. How can I ignore the heading of the section? You can follow what I think four other courts have decided and said, that it doesn't add to the value of the entire. First of all, we look to the plain language of the statute. Sometimes you turn to the title if it's not clear. However, the plain language is clear that it is pertaining to sections 101 through, I can't remember, 1378, I believe.  Right. And Spencer says, we'll assume that BII applies. We will not decide that merely because it's outside removal it doesn't apply. Right. So we've not addressed that one way or the other. Right. Spencer specifically said it was not addressing that. And I know that Mr. Tenlon Spencer assumed that the jurisdiction stripping provision did apply. I would say yes. Yes, Your Honor. But it didn't decide. Exactly. I think I'm with you on that point. Ms. Dryden, let me just ask you a practical question. Yes, sir. It's a floodgates question that concerns me greatly in immigration appeals. If we rule in petitioner's favor in this case, what are we opening ourselves up to in terms of the volume of visa applications that are routinely processed, granted, and denied by the agency in a year? I think, I don't know the numbers, Your Honor. I would imagine they're great. I think that is one of the reasons that Congress intended, and I don't think it would be the main reason to strip this court's jurisdiction, to review discretionary decisions. But I do believe it was one of the decisions in IRA-IRA in trying to economize the immigration system that this court and other federal courts not have jurisdiction over some of the discreet decisions made by the Attorney General that would change the discretion. Is it not a fact that these cases are not even appealable to the BIA from the AAU? That the AAU is the final adjudicative body within the, I guess now, Department of Homeland Security that reviews challenges to visas? Yes, Your Honor, it is. However, a revocation at this time, and I think Al Qaedaer recognizes and Sestronix, the District of Columbia, recognized that the Attorney General is twice reviewing a decision that he has made. He's initially approved a visa petition, and he, in this case, I do want to make clear, I should have pointed this out earlier, that former INS conducted a field interview of Mr. Yee and the Anna International Corporation. You're missing the thrust of my question. I'm less concerned with how much work the Attorney General has and more concerned with how much more we're going to be looking. I mean, we're having a hard time keeping up with the BIA appeals, and my sense is that there are hundreds of thousands of these visa applications that are processed annually, and if we get too carried away here, we could be drowning in reviews of these sorts of issues. I believe that recent newspaper articles have referred to the number of visa petitions at the service centers and that they're in the millions right now. So, yes, I believe you're, I feel your concern regarding that as far as having to review a third time in this case, review those decisions, and on the government side, briefing these cases that come before the federal courts. So, yes, the number is overwhelming. And another aspect of that, of the jurisdiction stripping, is that the Congress was, in 1996, was intending to move the federal courts from some of the foreign affairs issues that it had previously had under, prior to IRA-IRA, and granting and revoking and denying, well, in this case, let me step back, revoking visa petitions is seemingly a foreign affairs issue because we're deciding whether or not an alien should or should not remain in the United States in a legal status, and that is another reason that Congress passed IRA-IRA. Well, but that's such a broad argument. We have been deciding all kinds of judicial review questions touching on foreign affairs since the beginning of time. It's never stopped this court. Yes, Your Honor, I'm aware of that. Or the Supreme Court, or the Fourth Circuit, or the Seventh Circuit. Merely to say something touches on foreign affairs isn't to say very much. Right, but it does go to say that the Congress was intending to limit some of the federal courts' jurisdiction. Let me just pare this down a little bit. What we have in front of us in the statutory language and the regulatory language we've been dealing with is specifically addressed to revocation of visas. We do not have in front of us the question of a denial of a petition for a grant of a visa. That's a different issue, Your Honor. That's a different proposition. Yes, Your Honor. To the extent we're opening a floodgate, if we decide against you in this case and say that there is jurisdiction, the only question that we say would be judicially reviewable would be not whether it's been granted in the first place. That's an entirely different question. That's entirely true. The question is whether a visa once revoked, once granted, has been appropriately revoked. That's the question in front of us. Yes, Your Honor. What difference does it make, though? If you're making the decision to revoke on the basis of the same factors that you examined in deciding to grant the visa in the first place, there's no practical difference. Is there, whether you're reviewing the refusal to grant one versus the revocation of one that you granted because now you realize it was granted in error? There's a fine line between the two. In a denial, it's because the alien did not meet the legal standards. This goes back to the beginning of the argument. It goes back because the alien or the petitioner did not meet the legal standards, and that's the reason the Attorney General decided to deny. When the Attorney General decides to revoke. Isn't he, in effect, saying the same thing, that on second thought, he's looking at this particular visa applicant and he's revoking it because it should have been granted in the first place? He is not, in fact, a multinational executive here in the United States. That could be one of the reasons he's decided that. There could be other reasons, good and sufficient reasons, for whatever the Attorney General deems, outside of whether or not the alien met the legal standards for being a manager or an executive in the first instance. So it's a little bit broader than that, Your Honor. We have specific language here in 1155 telling us what the Attorney General should do with respect to revocations. He may at any time, for what he deems to be good and sufficient cause, revoke. What's the language for grant? That you turn back to Sections 203 and 204 to determine whether or not an alien is, in fact, eligible for that particular visa petition for which he's having filed on his behalf. I think 203 and 204 deal with the investors, managers, executive, professionals, sports players, and a myriad of visa petitions that must be granted if the alien meets certain criteria. Well, and maybe it's not here in the materials in front of you. You may not have been fully prepared on this, but I'm trying to take seriously Judge Thomas' perfectly valid point of, okay, well, if we were to say that there's jurisdiction to review a revocation, what in the principle that would allow us to review that would either allow us or not allow us to review failure to grant? Because the failure to grant cases, I suspect, are going to be much more numerous than the revocation cases. Yes, Your Honor. In other words, denial. Someone's going to say, my visa was denied. I want my visa. I claim I'm entitled to the visa. And if that were automatically reviewable in a federal district court, that's a lot of cases. So I'm trying to figure out what's the language that tells us what the standards are that would help us determine the reviewability in that determination. Well, I guess you can answer that. Well, it's not a discretionary determination. In that instance, the Attorney General must grant or must deny if the alien meets certain eligibility standards.  jurisdiction to review those actions, the denial or the grant. No one would be challenging the grant, of course, but the denial of a visa petition. As I turn back to it, the revocation is a little bit different. The revocation can be because the alien no longer meets those standards, never met those standards in the first instance, or for other reasons not pertaining to the visa petition. And it's for what he deems to be good and sufficient reason. And there is no jurisdiction. So I guess we've opened the floodgates already in Spencer and all we've got is a little side gate here in terms of the revocations. Well, the court shouldn't continue with the floodgates being opened. But the big one we already opened, I guess. Yes, Your Honor. The government agreed, though, in that case, that there was jurisdiction. Got it. Okay. We're there. I'm not sure you made me feel any better. You could still drown in a half inch of water is the concern. I'm trying to take away a millimeter, Your Honor, but I can't. We've got six feet of water and we're going to get six and a half feet? All right. Okay, I'm with you. I understand. I understand. All right. Thank you, Ms. Rice. Thank you. Sorry for holding you over in your own.  Thank you very much. Thank you. Mr. Chen, would you like to respond? No. First, I want to answer that question about on what standard this court can review whether Mr. V is eligible. And I cited in my reply brief on page 7 that statutory section is 8 U.S.C. 1153 B1C. And for Spencer Enterprises, it's just 1153 B5A, so they are sister sections. The government tries to distinguish between revocation and denial. I don't see any distinction. For example, is it 9? Is that your position? Well, it depends on what basis. If they decide based on eligibility, it's the same. Like in Spencer Enterprises, we understand the agent has to invest $1 million. The I.N.S. denied the visa, we go to court. Because we challenge you. We have $1 million. They said you don't. Now, if they approve the visa and later says, by the way, we want to revoke because you do not have $1 million, that's the same reason, same legal ground, same legal standards. If we say we cannot go to court, that's contradictory. That will allow I.N.S. to first approve the visa and then revoke the visa and then bypass the court jurisdiction. That would lead to absolute results. And about the reason in this case, government admitted clearly it's based on legal standards. This is on their brief on page 4 and 5. This is stated at the bottom of page 5. It says, because the record did not support a finding that U.S. duties at ANA were primarily executive or managerial within the definition of INA 101-A44. So they give statutory citation. That's legal determination. That's not discretion. And they continue. It goes on to the same page. It says three reasons down below. I don't want to read here in the middle. It says the AAU dismissed the appeal for the three reasons. Okay. So it's very clear. Let me ask you a question, John, about the exercise of discretion. Isn't it appropriate for discretion to be informed by the regulations? In other words, the statute could say that the attorney general can grant a visa completely at his whim without any standard whatsoever. Congress could do that if it wanted to. But what's the difference between exercising discretion informed by whether or not the petitioner meets certain regulatory provisions as opposed to simply allowing the attorney general to grant or deny a visa for any reason whatsoever or no reason at all? Well, I think 204 says the attorney general shall grant visa petition if he determines the facts of the petition are true. Based on that, Spencer says that's legal determination. That's not pure discretion. That's not pure discretion. That's right. And so I don't know how Congress does that. We say, well, INS has the power to administer immigration law. You go up to figure out whatever grant to issue a visa or deny a visa. I can see a difference if it is a pure objective standard. A million-dollar deposit in an escrow account proves you're an investor. But it's a harder question for me to determine whether or not the facts support the conclusion, the factual finding, that a person is or is not acting in a managerial capacity. That goes to the issue whether the factual determination by applying legal standard to the facts is legal determination. I think the case law I cited also says that's still legal determination. Just because you have to apply the law to the facts will change that to a discretionary decision. So is the logical conclusion of your argument, then, that anytime discretion is informed by standards and the rules, it is not by definition pure discretion within the meaning of Spencer and therefore always reviewable? That's what I deal with. OK. Thank you very much. You both ran over your time, but I think we profited from your arguments. Thank you. Very helpful. Glad you did. Very good arguments on both sides. Thank you very much. The case of AMA International versus Way is now submitted for decision. The next case on our argument calendar is Oviedo versus Johnson. Thank you.
judges: Goodwin, W. Fletcher, Tallman